1  PHILLIP A. TALBERT
   United States Attorney
2  TODD A. PICKLES
   ROSANNE L. RUST
3  Assistant United States Attorneys
   501 I Street, Suite 10-100
4  Sacramento, CA 95814
   Telephone: (916) 554-2700
5  Facsimile:  (916) 554-2900

6  Attorneys for Plaintiff
   United States of America

7

**FILED**

NOV 0 1 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,                CASE NO. 2:17-CR-0200 KJM

11                        Plaintiff,        VIOLATION: 18 U.S.C. § 371 – Conspiracy to
                                            Commit Bribery, to Commit Identity Fraud, and to
12              v.                          Commit Unauthorized Access of a Computer; 18
                                            U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B) & 28 U.S.C.
13 AARON GILLIAM,                           § 2461(c)) – Criminal Forfeiture

14                        Defendant.

15

16

17                        I N F O R M A T I O N

18  COUNT ONE:        [18 U.S.C. § 371 – Conspiracy to Commit Bribery, to Commit Identity
                      Fraud, and to Commit Unauthorized Access of a Computer]
19

20  The United States Attorney charges:

21                        AARON GILLIAM,

22  defendant herein,

23                   I.      THE CONSPIRACY

24      1.      Beginning no later than in or about April 2016, and continuing through in or about July

25 2017, in the County of Sacramento, State and Eastern District of California, and elsewhere, defendant

26 AARON GILLIAM did knowingly and intentionally conspire with others known and unknown to

27 commit bribery concerning programs receiving federal funds, in violation of Title 18, United States

28 Code sections 666(a)(1)(B) and 666(a)(2), to commit identity fraud, in violation of Title 18, United

States Code section 1028(a)(1), and to commit unauthorized access of a computer, in violation of Title 18, United States Code section 1030(a)(4).

## II.   BACKGROUND

At all relevant times,

2.     The California Department of Motor Vehicles (DMV) was a political subdivision and agency of the State of California that registered vehicles in California and licensed California drivers. The DMV also issued identification cards for individuals in California.  The DMV was funded by vehicle registration and licensing fees paid by residents and licensees of the State of California.  The DMV also received federal grants, including the following grant money:

| Fiscal Year (July 1 – June 30) | Total Approximate Amount of Federal Funds |
|---|---|
| 2015-2016 | $950,000 |
| 2016-2017 | $12,000 |

3.     The DMV issued various classes of driver licenses, including Class A, Class B, and Class C, based primarily on the type of vehicle to be operated.

4.     Class A and Class B California driver licenses (CDL) licensed a driver to operate a commercial vehicle in California.  A Class A commercial CDL licensed a driver to operate motor vehicles weighing more than 26,001 pounds, including vehicles that tow trailers or more than one vehicle, and vehicles that transport hazardous waste.  A Class B commercial CDL also licensed a driver to operate vehicles that weigh more than 26,001 pounds, but because of the towing capacity requirements, only drivers with a Class A CDL were permitted to drive an 18-wheel tractor trailer.  In contrast, a Class B CDL licensed a driver to operate a straight truck or bus, but did not allow the driver to pull a tractor trailer.

5.     A Class C California Driver License licensed a driver to operate a motor vehicle weighing less than 26,000 pounds, including ordinary passenger cars.

6.     The issuance of a Class A, Class B, or Class C CDL affected interstate commerce in that, among other effects, the licenses enabled recipients to drive passenger cars or commercial vehicles in other states and on interstate highways.

7.      To obtain a Class A or Class B CDL, an applicant was required to submit to the DMV a medical certification and pay an application fee, after which an electronic record was generated in the DMV's computer database for the applicant.

8.      An applicant was required to pass one or more written examinations based on the type of license. The DMV administered written examinations at most DMV locations.

9.      After an applicant passed the necessary written examinations for a Class A, Class B, or Class C CDL, a DMV employee would access the DMV's computer database for the applicant's electronic DMV record and input the results. Passing the written portion of the examination would typically result in a permit being issued for the applicant allowing the applicant to operate the vehicle under defined conditions.

10.     The behind-the-wheel driving examination was administered by a Licensing-Registration Examiner ("LRE") for the DMV. The DMV administered the behind-the-wheel driving examinations for Class A and Class B commercial CDLs at select DMV locations in California. In contrast, the DMV typically administered behind-the-wheel driving examinations for a Class C general CDL available at most DMV locations.

11.     After the applicant passed the requisite behind-the-wheel driving examination administered by the LRE for the Class A, Class B, or Class C CDL, an employee of the DMV would access the DMV's computer database for the applicant's electronic record and input the results. The DMV would then issue the licensee a temporary license from the office where the behind-the-wheel driving examination was administered.

12.     Thereafter, an official, hard plastic CDL was printed in Sacramento, California, and was then mailed to the licensee through the United States mail to an address identified in the licensee's application.

13.     The DMV's database was maintained on servers located in Sacramento County, California. This system interacts with remote terminals situated throughout the state and is available to DMV employees whose duties are to create, change, update, or delete records maintained by the system. The DMV database and computer system was used in and affected interstate and foreign commerce and communications.

1       14.    Using identification and passwords unique to each DMV employee, DMV employees
2 could access the DMV's database in Sacramento to update applicants' records.  DMV employees were
3 not authorized and were strictly prohibited from accessing, creating, deleting, or altering records without
4 a legitimate business purpose.

5       15.    AARON GILLIAM was an employee of the DMV, and worked as a Motor Vehicle
6 Representative in the DMV's office in Hollywood, California.  GILLIAM's job duties included, but
7 were not limited to, the processing of CDLs and identification card applications including Class A and
8 Class B commercial CDLs and Class C general CDLs, among other duties as assigned.

9       16.    Broker D owned and operated a truck-driving school in Southern California.

10       17.    Broker E owned and operated a truck-driving school in Southern California.

11               III.    OBJECTS OF THE CONSPIRACY

12       18.    The objects of the aforementioned conspiracy were to provide payment of money to
13 employees of the DMV in order to obtain CDLs for individuals who were not otherwise qualified to
14 obtain the licenses, in violation of Title 18, United States Code sections 666(a)(1)(B) and 666(a)(2); to
15 produce identification documents without lawful authority, in violation of Title 18, United States Code
16 section 1028(a)(1); and to access the DMV's database, without authorization, for the purpose of carrying
17 out the aforementioned scheme to commit identity fraud, in violation of Title 18, United States Code
18 section 1030(a)(4).

19              IV.    MANNER AND MEANS OF THE CONSPIRACY

20       19.    The objects of the conspiracy were carried out, in substance, as follows:

21        a.    In summary, beginning in at least September 2014, and continuing through at
22 least July 2017, truck-driving students, trucking company employees, and others (hereinafter
23 collectively "truckers") were solicited by Broker D, Broker E, and others (hereinafter collectively
24 "broker co-conspirators") to pay the broker co-conspirators money in exchange for obtaining for the
25 truckers Class A, Class B, and Class C CDLs without the truckers having to take or pass the written and
26 behind-the-wheel driving examinations.

27        b.    The broker co-conspirators, in turn, paid or caused to be paid money to GILLIAM
28 and other DMV employees (hereinafter "DMV co-conspirators"), for the purpose of GILLIAM and the

1  other DMV co-conspirators to access the DMV's database, which was housed in Sacramento, California,

2  and, without authorization, alter the truckers' electronic DMV records to incorrectly and fraudulently

3  indicate that the truckers had passed examinations that, in truth and in fact, the truckers had not taken or

4  passed, and which, therefore, caused DMV to issue CDLs to the truckers who had not completed the

5  necessary requirements to receive such licenses.

6          c.       From at least April 2016 through at least July 2017, GILLIAM and the other

7  DMV co-conspirators repeatedly, and without authorization, accessed the DMV computer database and

8  altered DMV records to incorrectly and fraudulently indicate that the truckers had passed the written

9  examinations for Class A, Class B, and/or Class C CDLs when, in truth and in fact, the truckers had not

10  taken or passed the written examinations.

11                    V.     OVERT ACTS OF THE CONSPIRACY

12          20.     In furtherance of the conspiracy and to accomplish its objects, GILLIAM, among others,

13  committed and caused to be committed the following overt acts, among others, in the State and Eastern

14  District of California and elsewhere:

15          a.       On or about October 7, 2016, GILLIAM, without authorization, accessed the

16  DMV's database in Sacramento and altered the DMV record a trucker ("Trucker A") by fraudulently

17  entering passing scores for the written examination.

18          b.       On or about January 23, 2017, GILLIAM, without authorization, accessed the

19  DMV's database in Sacramento and altered the DMV record a trucker ("Trucker B") by fraudulently

20  entering passing scores for the written examination.

21          c.       On or about January 23, 2017, GILLIAM, without authorization, accessed the

22  DMV's database in Sacramento and altered the DMV record a trucker ("Trucker C") by fraudulently

23  entering passing scores for the written examination.

24          d.       On or about February 13, 2017, GILLIAM, without authorization, accessed the

25  DMV's database in Sacramento and altered the DMV record a trucker ("Trucker D") by fraudulently

26  entering passing scores for the written examination.

27          e.       On or about February 28, 2017, GILLIAM, without authorization, accessed the

28  DMV's database in Sacramento and altered the DMV record a trucker ("Trucker E") by fraudulently

1   entering passing scores for the written examination.

2                    All in violation of Title 18, United States Code Section 371.

3

4   FORFEITURE ALLEGATION:          [18 U.S.C. §§ 982(a)(2), 981(a)(1)(C) and 28 U.S.C. § 2461(c) –

5                                   Criminal Forfeiture]

6        1.      Upon conviction of the offense alleged in Count One of the Information, defendant

7   AARON GILLIAM, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C),

8   § 982(a)(2)(B) and 28 U.S.C. § 2461(c), all property, real and personal, which constitutes or is derived

9   from proceeds traceable to such violations, including but not limited to a sum of money equal to the total

10  amount of money involved in the offenses, for which the defendant is convicted.

11       2.      If any property subject to forfeiture, as a result of the offenses alleged in Count of this

12  Information, for which the defendant is convicted:

13       a.      cannot be located upon the exercise of due diligence;

14       b.      has been transferred or sold to, or deposited with, a third party;

15       c.      has been placed beyond the jurisdiction of the court;

16       d.      has substantially diminished in value; or

17       e.      has been commingled with other property which cannot be divided without difficulty;

18  it is the intent of the United States, pursuant to 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c),

19  incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of defendant, up to the value

20  of the property subject to forfeiture.

21

22  Dated:  November 1, 2017

23                                          PHILLIP A. TALBERT
                                            United States Attorney

24                                  By:     _____
                                            TODD A. PICKLES
25                                          ROSANNE L. RUST
                                            Assistant United States Attorneys

26

27

28

### United States v. Aaron Gilliam
### Penalties for Information

**Defendant**
**AARON GILLIAM**


**COUNT 1:**          **ALL DEFENDANTS**

VIOLATION:          18 U.S.C. § 371 – Conspiracy to Commit Bribery, to Commit Identity
Fraud, and to Commit Unauthorized Access of a Computer

PENALTIES:          A maximum of 5 years in prison;
Fine of up to $250,000; or twice the gross loss or gross gain, both fine and
imprisonment; and/or
Supervised release of up to 3 years

SPECIAL ASSESSMENT: $100 (mandatory on each count)


**FORFEITURE ALLEGATION:**    **ALL DEFENDANTS**

VIOLATION:          18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(B), and 28 U.S.C. § 2461(c) –
Criminal Forfeiture

PENALTIES:          As stated in the charging document

2:17 - CR . 0 2 0 0 KJM